IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATRINA KYLES,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

No. 15 C 10225

Magistrate Judge Sidney I. Schenkier

## MEMORANDUM OPINION AND ORDER[2]

In this Social Security appeal, plaintiff, Katrina Kyles, seeks reversal and remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") (doc. # 16). The Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 23). For the reasons set forth below, we grant Ms. Kyle's motion to remand and deny the Commissioner's motion to affirm.

I.

Ms. Kyles was born on November 13, 1991, with a deformity of her right lower extremity (a "club foot") (R. 357). As a child, Ms. Kyles was frequently absent from school due to pain in her right foot, and she dropped out of school in twelfth grade because it was "too hard" (R. 32-39). On July 1, 2005, at age 13, Ms. Kyles was found to be disabled due to a learning disability and behavioral problems as well her right club foot (R. 129).

---

[1]Pursuant to Federal Rule of Civil Procedure 25(d), we have substituted Acting Commissioner of Social Security Nancy A. Berryhill as the named defendant.

[2]On November 24, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 10).

Individuals who are eligible for SSI benefits as children must have their disability redetermined under the adult rules for disability when they turn 18. 42 U.S.C. § 1382c(a)(3)(H). On September 13, 2010, the Social Security Administration ("SSA") determined that Ms. Kyles was no longer disabled as of September 2010 and discontinued disability benefits (R. 88-89). This decision was upheld on reconsideration (R. 90-91). After obtaining legal counsel, Ms. Kyles participated in a hearing before an ALJ on March 3, 2014 (R. 26-87). On March 18, 2014, the ALJ issued an opinion finding that Ms. Kyles' disability ended on September 1, 2010, and that she has not become disabled again since that date (R. 114). The Appeals Council upheld the ALJ's determination, making it the final opinion of the Commissioner (R. 1-5). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

On August 16, 2010, state agency consultant, Alexander Panagos, M.D., examined Ms. Kyles, noting that her right lower extremity showed severe atrophy from below the right knee with clubbing on the right foot and scarring from surgeries (R. 303). Although Ms. Kyles exhibited a full range of motion in all joints without redness or swelling, she was unable to perform heel or toe walk or squat, and she demonstrated difficulty performing tandem gait (*Id.*). Ms. Kyles had no cane or walker, but wore a special leg brace on her right lower extremity to help with her gait and balance (R. 301, 303). On September 10, 2010, state agency medical consultant Francis Vincent, M.D., opined that Ms. Kyles had the physical residual functional capacity ("RFC") to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for about 6 hours during an 8-hour workday; sit for about 6 hours during an 8-hour workday; occasionally climb ladders, ropes or scaffolds; frequently balance and crawl; and occasionally

stoop, kneel or crouch (R. 327-34). This RFC was affirmed on reconsideration in July 2011 by Virgilio Pilapil, M.D. (R. 355).

Consulting psychologist, Laura Higdon, Ph.D., examined Ms. Kyles on September 1, 2010. Although Ms. Kyles was polite and cooperative during the interview, Dr. Higdon noted that she was a poor historian with limited insight (R. 305-06). Dr. Higdon administered an intelligence test, which yielded a Full Scale (composite) Intelligence Quotient ("IQ") score of 68 (R. 307). Dr. Higdon diagnosed Ms. Kyles with Borderline Intelligence (*Id.*). Dr. Higdon also noted that Ms. Kyles showed no disturbance of gait or posture (*Id.*).

On September 9, 2010, Kurt Boyenga, Ph.D., completed a mental RFC assessment for the state agency (R. 309-325). Dr. Boyenga opined that Ms. Kyles had mild restrictions in activities of daily living ("ADLs"); moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (R. 319). He concluded that Ms. Kyles was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number or length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting (R. 323-24). For other functional categories, Dr. Boyenga found that Ms. Kyles was not significantly limited (*Id.*).

Dr. Boyenga's mental RFC determination was affirmed by state agency psychiatrist, Terry Travis, M.D., on July 6, 2011 (R. 355). However, Dr. Travis opined that Ms. Kyles had only mild restrictions in maintaining social functioning, and he additionally indicated that Ms. Kyles could follow simple instructions and complete one to two-step tasks in a routine work

3

setting (R. 345, 351). Dr. Travis concluded that Ms. Kyles was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances (R. 349). In the other functional categories, he found that Ms. Kyles was not significantly limited (R. 349-50).

The next medical evidence in the record is dated more than two years later, on October 11, 2013, when Benjamin Goldberg, M.D., a resident, and Joseph Karam, M.D., an orthopedic surgeon, examined Ms. Kyles (R. 365). Ms. Kyles had last been examined at their clinic in May 2005 (*Id.*). During the October 2013 visit, Ms. Kyles complained of right ankle pain that increased with standing for long periods, walking, and performing any weight bearing activities (*Id.*). Dr. Goldberg observed that Ms. Kyles' right calf was significantly smaller than her left calf and that she had significant weakness in ankle and plantar flexion on the right side (R. 366). Ms. Kyles was prescribed a replacement ankle-foot orthosis (*Id.*). Dr. Karam opined that Ms. Kyles was permanently disabled and could not stand for more than ten minutes per hour (R. 368).

At the hearing on March 3, 2014, Ms. Kyles testified that she had pain and swelling in her lower right leg, and if she stood for fifteen minutes, her leg would become numb (R. 39, 63-69). She stated that she planned to follow up with Dr. Karam for a new brace and possible surgery for her right foot (R. 68-69). However, when she used to miss school due to her right leg pain, Ms. Kyles did not see a doctor, but "just stayed home" (R. 40). Ms. Kyles lived with her two children, ages 10 months and two years, her parents, and her sister (R. 30, 50). Her parents, her children's father, and his parents helped her care for her children (R. 50-51).

The ALJ presented the vocational expert ("VE") with a hypothetical worker with a limited history of special education who could lift and carry no more than 20 pounds

occasionally and 10 pounds frequently; could be on her feet, standing and walking about two hours in an eight-hour workday, with normal rest periods; could sit about two hours with normal rest periods; needed to alternate between sitting and standing throughout the workday, though not necessarily at will; was unable to work at heights, climb ladders or frequently negotiate stairs; could only occasionally crouch, kneel or crawl; should avoid operation of moving or dangerous machinery as well as operation of foot controls; and would be unable to understand, remember or carry out detailed and complex job tasks (R. 77). The VE opined that this hypothetical worker could work as an order clerk, a telephone clerk, or an address clerk, but no jobs would be available if the hypothetical worker was off task more than 15 percent of the time or missed more than one day of work per month (R. 78-79).

### III.

On March 18, 2014, the ALJ issued a written opinion finding Ms. Kyles ineligible for SSI as of September 1, 2010, because she had attained the age of 18 and was not disabled pursuant to the rules for disability as applied to adults (R. 103-14). In his opinion, the ALJ followed the familiar five-step process for determining disability, 20 C.F.R. § 404.1520(a)(4). However, the ALJ found that Step 1 -- whether the claimant has performed substantial gainful activity -- did not apply to re-determinations of disability at age 18 (R. 104, citing 20 C.F.R. § 416.987(b)). At Step 2, the ALJ concluded that since September 1, 2010, Ms. Kyles had the following severe impairments: borderline intellectual functioning, learning disorder, and club foot (R. 105).

At Step 3, the ALJ found that Ms. Kyles did not have an impairment or combination of impairments that met or exceeded a listed impairment (R. 105). The ALJ stated that he considered Listing 1.02 for Ms. Kyles' club foot and Listings 12.02 and 12.05 for Ms. Kyles' mental impairments, and determined that Ms. Kyles had mild restriction in ADLs and social

5

functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation (R. 105-06). The ALJ stated that Ms. Kyles could clean, cook simple meals, wash dishes, use public transportation and go shopping, but needed help managing her money and caring for her two young children (R. 106). The ALJ further found that although Ms. Kyles had a full scale IQ of 68 in September 2010, "the longitudinal evidence does not demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning" as required by Listing 12.05 (R. 107).

The ALJ then determined that Ms. Kyles retained the RFC to perform sedentary work with: occasionally lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds; alternating sitting and standing throughout the day though not necessarily at will; no work at heights, climbing ladders, or frequently negotiating stairs; occasionally crouching, kneeling, or crawling; and no operation of moving or dangerous machinery or foot controls (R. 107-08). The ALJ also stated that "the claimant would be unable to understand, remember, and carry out detailed and complex job tasks" (R. 108).

The ALJ reviewed Ms. Kyles' allegations that she suffered severe limitations from her physical and mental impairments, but determined that her statements regarding the intensity, persistence and limiting effects of her symptoms were not "entirely credible" (R. 110). With regard to Ms. Kyles' physical impairment, the ALJ noted that the 2010 state agency examination showed that Ms. Kyles had severe atrophy and deformity as well as gait limitations of the lower right extremity (R. 109). However, the ALJ did not find this impairment disabling because Ms. Kyles did not take any prescribed medications and had a significant gap in her medical treatment between 2005 and 2013 (R. 109-10). The ALJ also noted that Dr. Higdon did not observe any abnormality in Ms. Kyles' gait (R. 109). As for Ms. Kyles' mental impairments, while the ALJ

6

recognized her history of learning problems and diagnosis of borderline intellectual functioning, the ALJ noted that Ms. Kyles was sometimes enrolled in regular rather than special education classes, her mental status examination in September 2010 was "essentially normal apart from slow speech," and she was "independent in her ability to function both in and out of the home" (R. 110-11).

The ALJ accorded "great weight" to the opinions of state agency mental health consultants Drs. Boyenga and Travis, finding them "consistent with the evidence as a whole" (R. 111). By contrast, the ALJ gave the opinions of state agency medical consultants Drs. Vincent and Pilapil "little weight" (*Id.*). The ALJ determined that the evidence supported limiting Ms. Kyles to the sedentary level due to her club foot rather than the light level as opined by Drs. Vincent and Pilapil (*Id.*). The ALJ gave the opinion of Dr. Karam "little weight," finding it unsupported by objective clinical findings, based on Ms. Kyles' subjective complaints, and conclusory (R. 112).

At Step 4, the ALJ found that Ms. Kyles had no relevant past work history (R. 112). Proceeding to Step 5, the ALJ determined that Ms. Kyles could perform jobs such as order clerk, telephone clerk and address clerk (R. 113). Accordingly, the ALJ concluded that Ms. Kyles was not disabled (R. 114).

### IV.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it

reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Ms. Kyles argues that the ALJ's opinion contains several errors that require remand. We focus here on errors in the ALJ's mental RFC and credibility determinations (doc. # 16: Pl.'s Br. at 8-11, 13-15).

### A.

The ALJ assigned Ms. Kyles an RFC that stated only the following with regard to her mental limitations: "[a]dditionally, the claimant would be unable to understand, remember, and carry out detailed and complex job tasks" (R. 108). This was the same statement of mental limitations the ALJ included in the hypothetical to the VE at the hearing. Ms. Kyles contends that this limitation fails to adequately account for her moderate limitations in concentration, persistence or pace, as determined by the ALJ (Pl.'s Br. at 10). We agree.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). By stating that Ms. Kyles "would be unable to understand, remember, and carry out detailed and complex job tasks," the ALJ did not adequately account for her moderate limitations in maintaining concentration, persistence or pace. The Seventh Circuit has "repeatedly rejected the notion that . . . 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga v. Colvin*, 794 F3.d 809, 814-15 (7th Cir. 2015) (quoting *Yurt*, 758 F.3d at 858-60); *see also O'Conner-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("employing terms like 'simple, repetitive tasks' on

8

their own will not necessarily exclude from the [VE's] consideration those positions that present significant problems of concentration, persistence and pace"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting claimant to unskilled, simple work does not account for his difficulty with memory, concentration, and mood swings).

In this case, the mental RFC that the ALJ set forth in the RFC was less restrictive than that set forth and rejected in *Varga*. In *Varga*, the Seventh Circuit reviewed an ALJ's mental RFC assessment (as described in the hypothetical to the VE and as stated in the ALJ's written opinion) that limited the claimant to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions with few if any work place [*sic*] changes." *Varga*, 794 F.3d at 813. The Seventh Circuit reversed and remanded the ALJ's opinion on the ground that this limitation failed to "incorporate all of the claimant's limitations supported by the medical record," as shown by a state agency psychologist's assessment that the claimant had moderate difficulties in seven areas related to concentration, persistence or pace. *Id.* at 813-14.

In this case, the ALJ simply stated that Ms. Kyles "*would be unable* to understand, remember, and carry out detailed and complex job tasks" (emphasis added), but did not specify what Ms. Kyles *would be able* to do. This is especially problematic here, where the state agency mental health assessments by Drs. Travis and Boyenga -- to whose opinions the ALJ said he gave "great weight" -- specified five areas of moderate difficulties related to concentration, persistence or pace, as well as moderate difficulties in understanding and memory and the ability to adapt to changes in the work setting, and Dr. Travis included a restriction to one- and two-step work. The ALJ's failure to incorporate Ms. Kyles' moderate limitations in concentration, persistence or pace in the hypothetical presented to the VE or in the RFC he assigned to Ms.

9

Kyles -- and his failure to explain these omissions -- cannot be brushed aside as harmless, as the Commissioner asks us to do (Def.'s Mem. at 7-8). An ALJ's error may be considered harmless only if "we can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 770-08 (7th Cir. 2013). In this case, it is not clear that the ALJ's determination of disability will remain the same on remand, because once the VE and the ALJ adequately consider the mental limitations set forth by Drs. Travis and Boyenga, the jobs that Ms. Kyles is found able to perform may change. *See Gilbert ex rel. S.E. v. Colvin*, No. 12 C 6550, 2013 WL 4599348, at *15 (N.D. Ill. Aug. 29, 2013) (instructing the ALJ to seek clarification from the VE on remand concerning any conflict that may exist between Level 2 reasoning jobs and an RFC restricting an individual to one or two-step tasks because the Seventh Circuit has not addressed the issue and district courts have come to different conclusions). Thus, the ALJ's failure to adequately assess Ms. Kyles' mental limitations requires remand. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (finding that the ALJ "was compelled" to address the claimant's limitations in concentration, persistence, and pace and to account for a doctor's opinion that she was moderately limited in responding appropriately to supervisors).

**B.**

We also agree with Ms. Kyles that it was error for the ALJ to make an adverse credibility finding based in part on the lengthy gap in Ms. Kyles' medical treatment and her failure to take prescribed medications because the ALJ did not ask her the reasons for the lack of treatment (Pl.'s Br. at 14). It is well-settled that an ALJ "must not draw any inferences about a claimant's condition from this failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)

(internal quotations omitted). *See also Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (same). However, the ALJ, in this case, did not explore why Ms. Kyles had not sought additional medical treatment for her impairments. This error, too, requires remand.[3]

## CONCLUSION

For the reasons stated above, we grant Ms. Kyle's motion to remand (doc. # 16) and deny the Commissioner's motion to affirm (doc. # 23). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER:

Sidney I. Schenkier
**United States Magistrate Judge**

**Dated: February 28, 2017**

---

[3] Because we conclude that remand is necessary on these bases, we do not reach the merits of Ms. Kyles' additional arguments for remand.